FARMERS' MUTUAL FIRE & LIGHTNING INS. CO. OF MEDINA CO., O.
v. EMILY J. WARD AND HIRAM HART, PARTNERS, ETC.

**1. POLICY ISSUED IN NAME INDICATING JOINT OWNERSHIP NOT VOID BECAUSE PROPERTY IS SEVERALLY OWNED.**

> Where a building owned by one person, and certain personal property, the property of the tenant thereof, are insured in a mutual insurance company. the application for which and the constitution being signed by a name indicating a joint ownership therein, the husband of the tenant so signing upon the suggestion of the managing agent of the insurance company, such managing agent having knowledge of the several interests in the property insured, the policy is not void on the ground of misrepresentation, there being no intent on the part of the insured to deceive.

**2. JOINDER OF PARTIES—WHO MAY BE JOINED UNDER SEC. 5005 REV. STAT.**

> Plaintiffs, whose interests are several, may jointly maintain an action, under Sec. 5005 Rev. Stat., where all are interested in the subject of the action; are protected from loss, if at all, by one and the same instrument, and their loss occurs at one and the same time and all the rights of each can be fully protected in a single action without any prejudice to the defendant.

ERROR to court of common pleas.

Frank Heath and N. H. McClure, for plaintiff in error.

J. W. Seymour, for defendants in error.

**MARVIN, J.**

This is a proceeding in error brought to reverse a judgment of the court of common pleas in an action wherein the defendants in error were plaintiffs and the plaintiff in error was defendant. The result in the court of common pleas was a judgment in favor of each of the defendants in error. The terms, plaintiffs and defendant, used in this opinion, refer to the parties as they stood in the court below.

The petition upon which the case below was tried, was an amended petition and was filed by the plaintiffs jointly. The action was founded upon a policy of insurance issued by the defendant on June 28, 1894. The defendant is a mutual insurance association organized under the statutes of the state, for the purpose of insuring its members against loss or damage to property by fire or lightning.

. The policy sued upon, though dated as hereinbefore stated, purported to insure from April 12, 1894, at noon, until April 12, 1899, at noon. This policy was issued to E. J. Ward & Company.

By a provision of the constitution of the defendant, any person insuring in the association and complying with its rules, becomes thereby a member of the association. Before insurance was issued, it wa

required that the party wishing to insure should file an application for such insurance, and, before any policy should issue, the applicant must subscribe to the constitution and by-laws of the association in compliance with Sec. 3690 Rev. Stat.

The application upon which the policy sued upon was issued was dated April 12, 1894, and the signature thereon appears in these words " E. J. Ward & Co., by Agt.," and the subscription to the constitution is in the same words and dated at the same time. This signature to both the application and the constitution and by-laws was actually written by R. D. Ward, who was the husband of the plaintiff, Emily J. Ward. At the time of the making of this signature both to the application and the constitution and by-laws each was signed by J. S. Hatch in these words : " J. S. Hatch, Manager."

The property purporting to be insured was a barn valued, in the application, at $700, and certain personal property. The application sets out that the property to be insured was owned by E. J. Ward & Co., and, as has already been said, the policy was issued to E. J. Ward & Co. As a matter of fact, the barn was owned exclusively by the plaintiff, Hiram Hart, and the personal property exclusively by the plaintiff, Emily J. Ward. The Wards, husband and wife, were occupying a farm owned by Hart, on which the barn was situated. There was an arrangement between the Wards and Hart by which Mrs. Ward might become, upon certain conditions, the owner of the farm, but she never did become such owner. And the trial court instructed the jury (properly under the evidence) that Hart had no interest in the personal property, and that Mrs. Ward had no interest in the barn.

On February 14, 1899, said barn was entirely destroyed by fire, and at the same time a considerable part of the personal property was also destroyed in the same way, to recover for the loss of which the suit was brought.

Numerous errors are charged in the petition in error, one of which is that neither of the plaintiffs was ever a member of the association because neither had ever made application for membership or subscribed to the constitution and by-laws.

The evidence shows that J. S. Hatch, whose name, as has already been said, is signed on the application as manager, was, as such manager, the authorized agent of the defendant. The evidence tends to show that at the time the application was signed " E. J. Ward & Co., by Agt.," Hatch was informed of the real facts as to the ownership of property, and that R. D. Ward was acting as the agent of both Hart and Emily J. Ward in signing the application and the constitution and by-laws, and that it was at the suggestion of Hatch that the signature to each was made as it

was made. It is true that the signature would indicate that the property was owned by a copartnership, or, at least, was jointly owned by several persons; but with the knowledge on the part of the representative of the defendant that the property was owned in severalty, a part by one and a part by another person, and that the signature was made at the suggestion of the agent of the defendant, we think the association cannot be exonerated from liability because of the fact that on its face it would appear from the application and the signatures that the property was owned jointly by several parties.

In the case of Webster v. Insurance Co., 53 Ohio St. 558 [42 N. E. Rep. 546; 30 L. R. A. 719; 53 Am. St. Rep. 658], the court held that although the application for insurance represented that the property was owned jointly by Julia L. Webster and her husband, James E. Webster, while, in fact, the real estate was the sole property of the wife, Julia, and the personal property was owned solely by the husband, James, yet the facts being known to the company at the time the application was made and the policy issued, the company was not relieved from liability on that ground. Judge Spear, in the opinion in the case, at page 565, uses language which would seem to be equally applicable to the present case, as follows:

"* * * These plaintiffs were not lawyers; the property was in the country, and they were, without doubt, plain country folk. Who would suspect them of intending to be understood that their ownership was that of joint tenants, or of tenants in common, within legal definitions? Rather is it natural to presume that they used the word in the popular sense, implying that they owned the property together, and that no other person was interested in it."

There was no error on the part of the court of common pleas in holding that the application and the signatures to the constitution and by-laws, under the facts disclosed to the agent at the time the application was made, were not sufficient to defeat recovery.

It is further claimed that, under the facts as disclosed by the evidence, the action could not be maintained by the plaintiffs jointly because their interests were not joint; whatever interest each had was wholly separate and distinct from the interest of the other. This claim is, in part, answered by the case of Webster v. Insurance Co., *supra*. It is true that, in that case, no claim was made for the loss of personal property which was owned by the husband, and some stress is laid upon the fact that under the law and the relation subsisting between the husband and the wife, the husband had, in a sense, an interest in the real estate; so that the case is not, in that regard, parallel to this.

On the part of the Insurance Association we are cited to the case of

Masters v. Freeman, 17 Ohio St. 323. The first clause of the syllabus in that case reads :

" In an action brought by two plaintiffs for the recovery of a. personal judgment, on an alleged indebtedness· of the defendant to the plaintiffs jointly, the fact that the cause of action is not *joint* but *several* in its character, constitutes a good defense."

The claim in that case was based upon an alleged misappropriation of certain funds belonging to the plaintiffs and the defendant jointly. The defendant answered that whatever indebtedness existed against him in favor of the plaintiffs or either of them, was an indebtedness to each of them *severally* and *not jointly*, and the court, on motion, ordered such allegations of the answer as undertook to show this state of facts, to be stricken out and *this* is held by the Supreme Court to be erroneous.

The case of Bartges v. O'Neil, 13 Ohio St. 72, is also cited to us on the part of the Insurance Association. This was a suit brought originally by Owen O'Neil and Bridget, his wife, setting out that the O'Neils had been induced, by false representations of Bartges, to pay $1,300 for certain real estate which was really practically valueless. The court held in that case, that the plaintiffs had no joint interest in the claims, and, on page 77, this language is used :

" The petition, it is true, states the purchase of the Illinois lands to have been made by the plaintiffs ; and the representations as to the situation, quality and value of the lands are stated to have been made by Bartges to them, the plaintiffs ; yet, when taken all together, it appears from the petition that the purchase of the lands was made by Owen O'Neil, and that he paid the entire consideration ; and· that Bridget O'Neil was in no way interested, except to receive a conveyance of the title of the land so purchased by Owen. But the action is brought to recover for a cheat practiced by the defendant ; and if the alleged cheat was proved, the party cheated would be legally entitled to recover the damages thereby sustained."

And then the court go on to show that in no event was Bridget O'Neil injured by any representation made by Bartges ; that she parted with nothing, and that, whatever injury was sustained by anybody, was sustained by Owen O'Neil and by him alone, and for that reason, they could not maintain an action jointly for the fraud.

The present case differs from each of these cited, in that the plaintiffs claim under a contract issued to them jointly, although the facts show that their interests are separate.

Section 5005 Rev. Stat. reads:

" All persons having an interest in the subject of the action, and in

obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided."

In commenting upon this section, as found in the codes of the several states, Mr. Bliss, on Code Pleading (3 ed.), Sec. 73, p. 116, uses this language:

" There is a distinction between the rule requiring persons united in interest to be joined and the one just given (the section of the code above quoted), as the latter does not contemplate a joint interest, nor is the union made imperative. In the cases where it has been sanctioned the interest is called a common one—that is, certain persons are interested in that concerning which the wrong has been done, and will all be benefited by the relief which is sought; they have a common interest, and may join in seeking the relief. * * * In either case they may unite in an action, notwithstanding the technical common law rule confining the union to those having a joint interest."

Again, in Sec. 74, the same writer says:

" It shocks the prejudices of common law pleaders to speak of a union of plaintiffs where there is not a joint interest; and, such is the effect of legal education and long habits of thinking, that, what seems so natural in a proceeding to prevent a common injury, or to set aside a sale for the benefit of common creditors, or to subject to their respective claims the assets of an estate, seems almost impossible, in case a sum of money is sought to be recovered in which sundry persons have a several, and perhaps unequal, interest. But it has come to be generally conceded that the rule is universal in its application, as it is in its terms; and if two or more are interested in the subject of the action, and in the relief sought, they may unite as plaintiffs for the recovery of money, or of specific real or personal property."

This subject is further discussed in the subsequent sections of Bliss, and also in Pomeroy on Code Remedies, Secs. 41, 62, 63. The purport of the discussion by each of these writers is, that, under the system introduced by the code of civil procedure, the rules which were in force under the common law system are so relaxed as to conform in large measure to the rules in equity pleadings, and to authorize, though not necessarily to require, all who have an interest in the subject of the action, to unite in bringing suit.

In this case both plaintiffs were interested in the subject of the action; they were protected from loss, if at all, by one and the same instrument; their loss occurred at one and the same time; and, in this action, all the rights of each could be fully protected without any prejudice to the defendant.

There was no error on the part of the court in holding that the

Insurance Co. v. Ward.

action might be maintained by the plaintiffs joining in the petition. By direction of the court the jury answered certain questions propounded to them, as follows:

" 1. Who were intended by the name E. J. Ward & Co., as used in said application and policy? Answer: Emily J. Ward and Hiram Hart.

" 2. How much, if any, of your verdict do you find as due to Emily J. Ward? Answer: $200.76.

" 3. How much, if any, of your verdict do you find is due to Hiram Hart? Answer: $815.00."

Under the evidence the jury might properly have answered each of these questions as it did. In conformity with these answers, the court entered judgment in favor of each of the plaintiffs for the amount found due to them severally as shown by the foregoing answers.

The questions discussed in the opinion so far were properly raised by a motion filed for a new trial, and, so far as *those* questions are concerned, what has already been said in the case indicates that there was no error on the part of the court in overruling such motion.

Other questions are raised on the record—some as to the ruling of the court upon questions of evidence, as to the authority shown in R. D. Ward as the agent of the plaintiffs in making the application and effecting the insurance. Each of these has been carefully considered, and, without going into detail, we hold that there was no error in the ruling of the court as to any one of them which would justify a reversal of the judgment.

The judgment of the court of common pleas is affirmed.

---

## COURT STENOGRAPHERS.

[Summit (8th) Circuit Court, October term, 1902.]

Caldwell, Marvin and Hale, JJ.

### GIDEON CARR V. SUMMIT COUNTY.

1. SECTION 475 REV. STAT. NOT APPLICABLE TO SUMMIT COUNTY.

Summit county is not within the provisions of Sec. 475 Rev. Stat. *et seq.* providing for court stenographers in certain counties, but the appointment and duties of stenographers in said county are regulated by Sec. 1 of 90 O. L. 68 and Sec. 2 of 87 O. L. 93, and such county is not required to pay the stenographer's fees for a bill of exceptions ordered by the defendant in a criminal case. Whether said Sec. 475 Rev. Stat. *et seq.*; Sec. 1 of 90 O. L. 68 and Sec. 2 of 87 O. L. 93 are not in contravention of Sec. 26, Art. 2, of the constitution, *quaere.*